**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4531-16T1

ADRIANNE BRUCE,

     Plaintiff-Appellant,

v.

BOROUGH OF COLLINGSWOOD,

     Defendant-Respondent,

and

HADDON TOWNSHIP, COUNTY
OF CAMDEN, STATE OF NEW
JERSEY, CHARLES STOREY,
and ARMAND DEL ROCINI, JR.,

     Defendants.

_____

Argued September 17, 2018 – Decided October 18, 2018

Before Judges Messano and Rose.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket No. L-1361-15.

Jordan R. Irwin argued the cause for appellant (Begelman & Orlow, PC, attorneys; Jordan R. Irwin, on the brief).

John M. Palm argued the cause for respondent.

PER CURIAM

Plaintiff Adrianne Bruce slipped and fell on a patch of ice in an alley allegedly owned and maintained by defendant, Borough of Collingswood. Defendant moved for summary judgment, arguing plaintiff's injuries failed to meet the requirements of the Tort Claims Act, N.J.S.A. 59:1-1 to 12-3 (the TCA), specifically N.J.S.A. 59:9-2(d), which provides: "No damages shall be awarded against a public entity . . . for pain and suffering resulting from any injury; provided, however, that this limitation . . . shall not apply in cases of permanent loss of a bodily function, [or] permanent disfigurement . . . ." Following oral argument, the judge agreed and entered an order dismissing plaintiff's complaint for non-economic damages.[1] Plaintiff timely moved for reconsideration, which the judge denied.[2]

Before us, plaintiff argues her injuries were "permanent and substantial," thereby meeting the standard first announced by the Court in Brooks v. Odom,

---

[1]  The judge entered a separate order granting summary judgment to co-defendants Charles Storey and Armand Del Rocini, Jr. Plaintiff does not appeal from that order.

[2]  The parties subsequently agreed to dismiss with prejudice plaintiff's claim for economic damages.

A-4531-16T1

150 N.J. 395, 406 (1997). Additionally, plaintiff argues she suffered "permanent disfigurement," an issue fully briefed before the motion judge, but which he never addressed.

We agree that for purposes of summary judgment, plaintiff raised a genuine issue of material fact as to whether her injuries were permanent and substantial. Therefore, summary judgment was inappropriate and we reverse. Moreover, because the appellate record is unclear regarding plaintiff's claim of permanent disfigurement, and because the judge never addressed the issue, we remand to the trial court to determine whether that specific allegation should survive summary judgment.

Lastly, although defendant argued it was immune from any claim pursuant to N.J.S.A. 59:4-7, the TCA's so-called "weather immunity," the judge admittedly "punted" on the issue and never decided it. Inexplicably, defendant has not reasserted this argument before us. See, e.g., Smith-Bozarth v. Coal. Against Rape & Abuse, Inc., 329 N.J. Super. 238, 244 n.1 (App. Div. 2000) ("[W]ithout filing a cross appeal, a respondent may seek an affirmance of the judgment on any ground raised in the trial court."). Nevertheless, we do not deem the argument to be waived, and, therefore, on remand, defendant is free to raise this defense anew before the trial judge.

A-4531-16T1

We review the grant of summary judgment de novo, applying the same standard used by the trial court, which

> mandates that summary judgment be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law."
> [Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).]

We also determine "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We owe no deference to the trial court's legal analysis or interpretation of a statute. The Palisades at Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Viewed in a light most favorable to plaintiff, the motion record revealed that in the early evening of January 29, 2014, while walking her dogs, she slipped and fell on ice and fractured her left wrist; plaintiff is left-hand

A-4531-16T1

dominant. She underwent surgery, requiring the internal placement of pins and the attachment of an external fixator device, which remained in place for approximately two months. By May, plaintiff completed physical therapy and her surgeon opined that plaintiff's fracture was clinically and radiographically healed. At that time, the range of motion in her left wrist was five degrees less than that of her right. Plaintiff missed only three days of work as a legal secretary and by May was able to type using both hands.

Plaintiff's treating surgeon reevaluated her wrist in January 2016, and found that although her surgical incisions had healed properly, plaintiff still lacked five-to-seven degrees range of motion in her left wrist. Additionally, plaintiff made complaints of pain and stiffness with increased physical activity and changes in weather. The surgeon opined with a reasonable degree of medical certainty that plaintiff's injury was permanent, i.e., her wrist will never function normally, and plaintiff will be unable to perform some life activities such as repetitive pushing, pulling or lifting heavy objects.

In her certification opposing the motion, plaintiff complained of varying degrees of pain and limited range of motion in her wrist. She cannot lift heavy items, sometimes loses her grasp and drops things. Plaintiff also claimed her injured wrist forced her to limit her exercise routines. However, plaintiff

admitted that she was able to paint some of the rooms in her home after the accident.

Since Brooks, the Court has again clarified that to survive summary judgment, a plaintiff must establish "(1) an objective permanent injury, and (2) a permanent loss of a bodily function that is substantial." Gilhooley v. Cty. of Union, 164 N.J. 533, 540-41 (2000). Here, defendant concedes plaintiff suffered a permanent injury to her left wrist but argues any loss of function was not substantial.

The motion judge observed, and we agree, that each case is fact-sensitive, and it is virtually impossible to find, as he put it, "[a] line in the sand" that demarcates what is or is not a substantial loss of function. However, plaintiff's ability to return quickly to work and perform her functions as a legal secretary is not dispositive. See, e.g., Kahrar v. Borough of Wallington, 171 N.J. 3, 15 (2002) (noting that "dicta in Brooks should not be understood to suggest that plaintiffs with permanent and substantial impairments who, nevertheless, can manage to perform adequately routine tasks at work and at home are barred from recovery").

In Kahrar, the plaintiff suffered a massive tear of her rotator cuff that required surgery to "remove[] a portion of the bone in her shoulder and reattach[]

the severed tendon to the shoulder." Id. at 7. Although the plaintiff's incision healed properly, she "had approximately forty percent loss of full motion in her left shoulder." Id. at 8. The Court held that "[i]f the loss of bodily function is permanent and substantial, . . . a plaintiff's eligibility to recover pain and suffering damages will not be defeated merely because she can perform some routine functions almost as well as she could prior to her injury." Id. at 15. The Court considered several objective factors such as the seriousness of the injury, the invasiveness of the surgery, and the extent of reduction in normal range of motion. Id. at 16.

In Gilhooley, the plaintiff suffered a fractured patella as the result of a fall. She underwent open reduction surgery with internal fixation, by which wires and pins were permanently inserted into her patella. 164 N.J. at 536, 542. Although she returned to work in her full capacity shortly after the fall, she experienced continued stiffness and pain in her knee. Id. at 537.

In reversing our affirmance of the trial court's grant of summary judgment, the Court held that the plaintiff sustained a permanent loss of a bodily function that was substantial. Id. at 541. Justice Long writing for the Court explained:

> We are satisfied that the Legislature intended to include within the notion of aggravated cases those involving permanent injury resulting in a permanent loss of normal bodily function even if modern medicine

can supply replacement parts to mimic the natural function. As is the case with dismemberment and disfigurement, when pins, wires, mechanisms and devices are required to make the plaintiff normal, the statutory standard is met. The fact that a physician has jury-rigged the knee to function with pins and wires in no way inhibits the characterization of that injury as the permanent loss of a bodily function. The same would be true of a plaintiff whose vision is restored with a lens, one whose hearing is restored with a hearing aid, and one whose heart is operating efficiently with a pacemaker or implanted valve. We conclude that those are all aggravated cases within the contemplation of the Legislature when it enacted the "permanent loss of bodily function" language and that they fall squarely within the "substantial" requirement of Brooks.

[Id. at 542-43.]

See also Leopardi v. Twp. of Maple Shade, 363 N.J. Super. 313, 333-34 (App. Div. 2003) (holding the plaintiff's spinal fusion surgery, which did not include installation of hardware, that left some decreased mobility and increased potential for more damage to his spine, satisfied the TCA's requirement of a permanent injury that was substantial), certif. granted, 179 N.J. 370 (2004), appeal dismissed, 187 N.J. 486 (2005).

Surgical intervention alone is not dispositive because, as defendant notes, the Court has held in other circumstances that the plaintiffs failed to demonstrate a "substantial" loss of a bodily function under the TCA despite having undergone surgical procedures. For example, in Ponte v. Overeem, 171 N.J. 46

(2002), decided the same day as <u>Kahrar</u>, the Court concluded that although the plaintiff underwent arthroscopic knee surgery, there was no evidence his "range of motion [was] limited, his gait impaired or his ability to ambulate restricted." <u>Id.</u> at 54.

Similarly, in <u>Hammer v. Township of Livingston</u>, the plaintiff underwent surgery on her knee and elbow because of injuries suffered in a motor vehicle accident. 318 N.J. Super. 298, 301 (App. Div. 1999). We held that the plaintiff's subjective complaints of residual pain were insufficient, particularly in light of objective medical evidence indicating she suffered no restrictions on range of motion or limits on the functioning of her joints. <u>Id.</u> at 301-02.

In <u>Knowles v. Mantua Township Soccer Association</u>, the Court explained the types of injuries that satisfy the threshold. 176 N.J. 324 (2003). These include "an injury that permanently would render a bodily organ or limb substantially useless but for the ability of 'modern medicine [to] supply replacement parts to mimic the natural function,'" <u>id.</u> at 332 (quoting <u>Gilhooley</u>, 164 N.J. at 542-43), if there is "a 'physical manifestation of [a] claim that [an] injury … is permanent and substantial.'" <u>Ibid.</u> (quoting <u>Ponte</u>, 171 N.J. at 54). "[N]either an absence of pain nor a plaintiff's ability to resume some of his or

9

her normal activities is dispositive of whether he or she is entitled to pain and suffering damages under the TCA." Ibid. (citing Kahrar, 171 N.J. at 15-16).

Admittedly, this is a close case. Plaintiff can perform most of her routine tasks without significant limitation. However, like the plaintiff in Gilhooley, only the insertion of pins in plaintiff's wrist permits the joint to "mimic [its] natural function." 164 N.J. at 542. Moreover, the objective medical evidence demonstrates permanent limitations on the range of motion in her dominant wrist, albeit much less than was the case of the plaintiff in Kahrar.

We conclude that for purposes of summary judgment, plaintiff has demonstrated a material factual dispute as to whether her wrist injury meets the requirements of the TCA. We therefore reverse summary judgment and remand the matter to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4531-16T1